UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

CA 07 258S

| | | |
|---|---|---|
| CVS PHARMACY, INC., Plaintiff, | ) | |
| v. | ) | C.A. No.: __________ JURY TRIAL DEMANDED |
| PRASCO, LLC, Defendant. | ) | |

**COMPLAINT**

This is an action for breach of contract arising from the actions of Prasco, LLC ("Prasco" or the "Defendant") in violation of an agreement ("Agreement") to sell directly or indirectly to CVS Pharmacy, Inc. ("CVS" or the "Plaintiff") fexofenadine hydrochloride tablets ("Product") at the lowest price offered to any other customer. In violation of this Agreement, the Defendant charged another customer a substantially lower price on this Product, causing CVS over $15.6 million in damages.

**PARTIES**

1. Plaintiff CVS Pharmacy, Inc. ("CVS") is a Delaware Corporation with its principal place of business located at One CVS Drive, Woonsocket, Rhode Island 02895.

2. Defendant Prasco, LLC ("Prasco") is an Ohio Corporation in the generic pharmaceutical industry with its principal place of business located at 7155 E. Kemper Road, Cincinnati, Ohio 45249.

**JURISDICTION**

3. This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332.

## FACTS

4. On September 23, 2005, Mitch Cullen ("Cullen"), Vice President of National Accounts for Prasco, sent Craig Heneghan ("Heneghan"), Vice President of Pharmacy Merchandising for CVS, a draft of an agreement pursuant to which Prasco would sell to CVS the Product, a generic form of a brand pharmaceutical sold under the name Allegra.

3. After reviewing Prasco's first draft of the Agreement, Heneghan added certain provisions essential to CVS's willingness to purchase the Product form Prasco, as opposed to another source of an equivalent generic product.

4. In a telephone call in which Heneghan informed Cullen of the changes he wished to make to the Agreement, Cullen approved the additions.

5. On that day, September 23, 2005, CVS and Prasco entered the Agreement. See CVS Direct Contract (redacted to remove confidential pricing information), attached hereto as Exhibit A.

6. The Agreement required Prasco to sell the Product to CVS in dosages of 30, 60, and 180 mg at set prices. Id.

7. As part of the Agreement, Prasco agreed that CVS would receive a quarterly rebate of 0.5% on invoices paid by CVS. Id.

8. Prasco further agreed that all purchases made under the Agreement would be made in accordance with CVS's business standards ("Business Standards," a copy of which is attached hereto as Exhibit B). Id. at ¶ 2.

9. The Agreement defined CVS's Business Standards to include, without limitation, CVS's Return Goods Policy, CVS's Generic Business Standards, CVS's Billback Program, and CVS's Base Portfolio Generic Rebate Policy. Id. at ¶ 2.

10. Pursuant to the Agreement, Prasco agreed that in the event of any cost decrease, CVS would be compensated for the difference between the then current (reduced) cost and the cost at the time of invoice for each unit of the Product on hand (the difference between the number of units obtained as a result of direct or indirect purchases and the number of units dispensed) upon the effective date of a cost decrease ("Price Decrease Protection Clause"). Id. at ¶ 3.

11. The Agreement also included a "Most Favored Nation Clause" providing that Prasco "warrants and represents that CVS will pay the lowest price by Prasco to any other customer regardless of class of trade." Id. at ¶ 4.

12. The Most Favored Nation Clause of the Agreement further required that "CVS will pay Prasco the lowest price (net of all rebates, allowances, programs, etc.) when compared to any other Prasco customer." Id.

13. The Most Favored Nation Clause of the Agreement further provided that the prices included in a purchase order "shall be automatically revised (by Prasco to CVS) to equal the lowest cost at which Prasco shall have sold or shall have offered to any other customer." Id.

14. On at least two occasions, Heneghan contacted Cullen at Prasco to confirm that Prasco was honoring the Agreement by offering CVS the lowest price offered for the Product. On each occasion, Cullen represented that Prasco was honoring the terms of the Agreement.

15. On May 4, 2006, the Parties executed a price revision agreement in which Prasco agreed to decrease the cost of the Product sold to CVS. A copy of the May 4, 2006 Price Revision Agreement (redacted to remove confidential pricing information) is attached hereto as Exhibit C.

16. On June 5, 2006, after noticing an apparent error in CVS's May 2006 shelf stock differential calculation, Prasco sent a fax to CVS forwarding a copy of the parties' Agreement and explaining its understanding of the method to be used to calculate the shelf stock differential under Paragraph 3 of that Agreement. A copy of the fax from M. Pendley to C. Heneghan dated June 5, 2006 (redacted to remove confidential pricing information) is attached hereto as Exhibit D.

17. On June 16, 2006, CVS and Prasco agreed to modify the shelf stock differential calculation method from the procedure set forth in paragraph 3 of the parties Agreement to the method set forth in CVS's Business Standards. A copy of the letter from C. Heneghan to M. Cullen dated June 16, 2006 (redacted to remove confidential pricing information) is attached hereto as Exhibit E. Pursuant to CVS's Business Standards, in the event of any cost decrease, CVS is to be compensated for the difference between the then current (reduced) cost and the cost at the time of invoice for each unit of the Product in stock (as a result of direct or indirect purchases) at CVS's distribution centers and for five weeks' inventory at store level upon the effective date of a cost decrease ("Business Standards' Price Decrease Protection Clause"). Business Standards, Ex. B, at 2.

18. On March 2, 2007, the parties executed another price revision agreement in which Prasco agreed to decrease the cost of the Product sold to CVS. A copy of the March 2, 2007 Price Revision Agreement (redacted to remove confidential pricing information) is attached hereto as Exhibit F.

19. On March 5, 2007, CVS informed Prasco of its shelf stock differential calculation based on the March 2 price decrease in which store quantity was based on 5 weeks' inventory in accordance with the Business Standards' Price Decrease Protection Clause. A copy of the letter

from C. Heneghan to M. Cullen dated Mar. 5, 2007 (redacted to remove confidential pricing information) is attached hereto as Exhibit G.

20. On March 22, 2007, CVS Corporation, CVS's parent, announced that Caremark Rx, Inc. ("Caremark") merged with another wholly owned subsidiary of CVS Corporation (the "Merger").

21. As a result of the Merger, CVS learned that, contrary to the Agreement, Prasco had not, in fact, charged CVS the lowest price offered to any other customer. Instead, CVS learned that Caremark had been charged a lower price than CVS.

22. The difference between the lower price charged to Caremark and the price charged to CVS for the Product purchased by CVS during the period of the Agreement totals at least $15.6 million.

23. Confronted with CVS's knowledge of its breach of the Most Favored Nation Clause, in April 2007 Prasco reduced the price it charged CVS for the Product to match the price that which had been charged to Caremark. A copy of the letter from Prasco's E.T. Arington to CVS's Matthew Leonard dated Apr. 26, 2007 (redacted to remove confidential pricing information) is attached hereto as Exhibit H.

24. In a letter from Heneghan to Cullen on May 3, 2007, and in accordance with CVS's Business Standards and Paragraphs 2 and 3 of the Agreement, CVS requested a shelf stock differential of $3,002,327 in response to Prasco's April 2007 price reduction. A copy of the Letter from C. Heneghan to M. Cullen dated May 3, 2007 (redacted to remove confidential pricing information) is attached hereto as Exhibit I. The May 3, 2007 letter indicated that if CVS did not receive a check or credit memo in the amount of the calculated shelf stock differential, an offset would be processed on June 4, 2007. Id.

25. Prasco refused to comply with the terms of the Agreement, as amended, by providing CVS with the shelf stock differential corresponding to its April 2007 price reduction as requested.

26. As indicated in its May 3, 2007 letter, CVS deducted the $3,002,327 owed as a shelf stock differential from subsequent Prasco invoices.

27. Despite CVS's demand, Prasco has refused to acknowledge that CVS is entitled to the $15.6 million difference between the lowest price offered and the price CVS paid during the period of the Agreement or that CVS properly withheld the $3,002,327 shelf stock differential from Prasco invoices to recoup a portion of that $15.6 million.

## COUNT I

### BREACH OF CONTRACT

28. CVS repeats and incorporates herein by reference the allegations contained in paragraphs 1 through 27 of this Complaint.

29. CVS complied in all material respects with its obligations under the Agreement.

30. Prasco breached the Agreement by failing to charge CVS the lowest price that it charges to any other Prasco customer in accordance with the Most Favored Nation Clause and by failing to reimburse CVS in accordance with the Price Decrease Protection Clause and/or the Business Standards' Price Decrease Protection Clause.

31. As a direct and proximate result of Prasco's breach of the Agreement, CVS was harmed, because it paid at least $15.6 million more than it should have paid under the Agreement for Product that CVS purchased directly and/or indirectly from Prasco.

32. Pursuant to the Agreement, CVS has recouped $3,002,327, but Prasco continues to owe CVS over $12.6 million.

33. Despite CVS's demand, Prasco has refused to honor its obligations under the Agreement.

## COUNT II

DECLARATORY JUDGMENT:
CVS IS ENTITLED TO TAKE A CREDIT TO RECOUP ITS SHELF STOCK DIFFERENTIAL

34. CVS repeats and incorporates herein by reference the allegations contained in paragraphs 1 through 33 of this Complaint.

35. Pursuant to the terms of the Agreement, when Prasco decreased its prices in April of 2007, CVS became entitled to a shelf stock differential of $3,002,327.

36. CVS has deducted the $3,002,327 owed by Prasco under the terms of the Agreement, as amended, as a result of Prasco's April 2007 price decrease from subsequent Prasco invoices.

37. Prasco has refused to agree that CVS was entitled to take these credits against its invoices. As a result, an actual controversy exists as to whether CVS is entitled to retain the $3,002,327 shelf stock differential credit it has applied against Prasco's invoices. See 28 U.S.C. § 2201.

38. Pursuant to 28 U.S.C. § 2201, CVS is entitled to a declaratory judgment declaring that CVS rightfully took a credit against Prasco invoices in the amount of $3,002,327 to recover the shelf stock differential owed by Prasco.

## PRAYER FOR RELIEF

WHEREFORE, CVS respectfully requests that the Court, after hearing, enter judgment in its favor and award it the following relief:

1. Adjudicate and declare that the Defendant has breached the terms of the Agreement.

2. Assess and award CVS damages resulting from the Defendant's breach of contract.

3. Issue a Declaratory Judgment declaring that CVS rightfully took a credit against Prasco invoices in the amount of $3,002,327 to recover the shelf stock differential owed by Prasco.

4. Award CVS pre-judgment interest and its costs incurred in this action;

5. Such other and further relief as this Court deems just and equitable under the circumstances.

6. CVS hereby demands a jury trial on all issues so triable.

CVS PHARMACY, INC.
By its attorneys,

Caroline Turcotte (#7165)
Raymond M. Ripple (# 6489)
EDWARDS ANGELL PALMER &
DODGE LLP
2800 Financial Plaza
Providence, RI 02903
(401) 274-9200 (phone)
(401) 276-6611 (fax)
rripple@eapdlaw.com

*Of counsel*
Steven M. Cowley, Esq.
Elizabeth A. Spinney, Esq.
Edwards Angell Palmer & Dodge LLP
111 Huntington Ave.
Boston, MA 02199
(617) 239-0100 (phone)
(617) 227-4420 (fax)
scowley@eapdlaw.com
espinney@eapdlaw.com

Dated: July 6, 2007